2746.

No. 9075.

INTERNATIONAL TRUST CO. *v.* LOWE.

1. MECHANIC'S LIEN—*Mines—Mining Supplies—Relation of Lien.* Coal and lagging furnished to a mining company, at various times, but under a single agreement, found a lien dating from the delivery of the first item.

2. —— *To Whom Lien Allowed—Engineer.* A mining engineer is entitled to a lien for surveys, superintendence, or other professional services about the mine.

3. —— *General Manager.* The general manager of a mining company serving at a salary, under employment for a term of years, took an active part in the framing and issue of a series of bonds, secured by mortgage of the company's properties. Held that he was not entitled to a lien for his salary, as against the bondholders.

4. PLEADING—*Waiver.* Action to enforce a mechanic's lien against the trustee in a mortgage of the property of a mining company. Demurrer for absence of the bondholders. Demurrer overruled, and the trustee in the mortgage answered. The absence of the bondholders was waived.

*Error to Gilpin District Court, Hon. H. S. Glass, Judge.*

Department One.

Messrs. HUGHES & DORSEY, Mr. E. I. THAYER, WM. M. BOND, JR., for plaintiff in error.

Mr. L. J. WILLIAMS, for defendant in error.

Opinion by Mr. Justice Teller.

DEFENDANT in error was given a lien upon the mining property involved in the recently decided cause, *International Trust Company v. Clark Hardware Company*, No. 9074, for a balance due him for services rendered to the Topeka Consolidated Mining Company, and on account of certain labor claims, and a claim for a balance on account of coal and timber supplied to said Mining Company, all of which claims had been assigned to him. The principal question presented here is as to priority of liens, as in the case just mentioned, though the right to a lien on one claim is also contested.

The claim of Cody Brothers, who furnished the coal and lagging, is established by undisputed evidence, as is also the fact that the manager of the Mining Company arranged for such supply of coal before the execution of the deed of trust to plaintiff in error, under which it claims a first lien.

It appears that the coal and timber were furnished as needed from the making of said agreement, on what the trial court found was an open, continuous and running account. For the reasons stated in the opinion in the case above mentioned, we accept that finding, and hold that there was no error in awarding a lien for the balance due on said account.

The defendant in error during the time of the rendering of the services which form the basis of his claim was the president and the general manager of the Mining Company, and as such president he executed the deed of trust to plaintiff in error, as trustee, to secure an issue of bonds.

He signed also said bonds. He had a contract, in writing, with said Mining Company for a term of years to serve as manager at a stipulated salary, which contract antedated the deed of trust.

Objection is made that in his position as president and manager he was, in a way, the company, and could not acquire a lien as against the representative of the bond-holders.

We think the objection is well taken. In Jones on Liens, 2nd Ed., Sec. 1363, it is said:

"A general manager of a corporation in all its business, at the place where it is carried on, is not a laborer entitled to the benefits of the provisions of a mechanic's lien law. Such a manager stands very much in the position of an owner directing and managing his own business. He is the representative of the corporation, and to the laborers under him he is practically the corporation itself. Such owners do not come within the spirit of the mechanic's lien acts."

It is settled law that the work for which a lien on a mine is given is that which is performed in the development and conservation of the mine, and the results of which become incorporated with the mine so as to constitute a part of its value. *Barnard v. McKenzie,* 4 Colo. 251.

While the case cited does not involve the right of a manager to a lien, it clearly indicates, as above stated, the ground upon which statutes giving such liens are based. It would be manifestly inequitable to permit one who had thus shared in an issue of bonds to defeat the claims of bond-holders through acquiring a lien on their security by setting up services under a contract which was in existence when he aided in the issue of the bonds, and of which they are not presumed to have had knowledge. *Ponder v. Building & Loan Co.,* (Ky.) 59 S. W. 858.

The record discloses that there was a superintendent employed at the mine from which it is fair to assume that

the manager's duties did not include the direction of work on the mine.

The court erred in allowing defendant in error a lien for a balance due on salary.

Objection is made, also, to the claim of Brown, a mining engineer, who was employed as superintendent, on the ground that he was acting as a direct representative of the company, and was not within the spirit of the law.

Said section 4 makes the provisions of the act applicable to "all persons who shall do work or shall furnish materials, etc., * * * as provided in section one of this act," etc.

Section one of the act gives a lien to engineers who have furnished "surveys or superintendence," or "who have rendered other professional or skilled service," etc.

A mining superintendent may, therefore, acquire a lien on a mine whose working he has superintended.

The court found that Brown began work for the company on the day that the trust deed was executed and before it was filed for record, under a contract with the manager, and that he had rendered a service continuously from that date.

It was likewise found that Sparks and Wilkinson performed labor on the mine, under contracts of employment made with the company, work having been begun thereunder on January 1, 1911, thus antedating the deed of trust.

These findings are conclusive on this court, no question being made as to the sufficiency of the evidence to support them.

It is also objected that there was a defect of parties in that the bondholders were not made defendants. This objection was presented as one of the grounds of demurrer, and was waived when the defendant Trust Company answered and went to trial. *Hardy v. Swigart*, 25 Colo. 136, 53 Pac. 380.

The decree is, therefore, good as against the bondholders.

The judgment should be amended by eliminating the provision giving a lien to defendant in error Lowe for his claimed balance on his own account, and, as so amended, it is affirmed.

Chief Justice Garrigues and Mr. Justice Burke concur.