549 P.2d 408 (1976)
RIDGE ERECTION CO., Plaintiff,
v.
MOUNTAIN STATES TELEPHONE & TELEGRAPH COMPANY, Defendant-Appellee,
Fred Johansson & Associates et al., Defendants,
Trustees of the Colorado Carpenters Joint Apprenticeship Trust Fund et al., Defendants Intervenors-Appellants.
MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, Third-Party Plaintiff,
v.
Fred JOHANSSON, Individually, and Harold Baumgartner, Individually, Third-Party Defendants.
No. 75-347.
Colorado Court of Appeals, Div. I.
April 8, 1976.
*409 Rovira, DeMuth & Eiberger, J. Walter Hyer, III, John L. Traylor, Denver, for defendant-appellee, third-party plaintiff.
Gorsuch, Kirgis, Campbell, Walker & Grover, Pamela M. Martin, Denver, for defendants-intervenors-appellants.
Selected for Official Publication.
COYTE, Judge.
The appellants herein are the trustees of various express trusts established to provide health and welfare, pension, education and training, vacation and similar benefits to the trusts' beneficiaries, which beneficiaries include workmen who performed labor in the construction of improvements on real property owned by appellee, Mountain States Telephone and Telegraph Company (Mountain Bell). They appeal from an adverse summary judgment entered following a trial to the court on their mechanics' lien claims. We affirm.
The undisputed facts of the case are as follows: Fred Johansson & Associates executed a contract with Mountain Bell, as the owner, to construct improvements on real property. Johansson subsequently entered into contracts with several subcontractors *410 whereby he agreed to pay for labor and materials furnished by them for the project. In conjunction therewith, he further entered into three collective bargaining agreements, an interim building construction agreement with the Carpenters District Council of Denver and vicinity, the 1972-1975 statewide laborers building construction agreement, and the 1972-1975 Colorado cement masons building construction agreement. Each of the collective bargaining agreements incorporated by reference the provisions of certain trust agreements by the terms of which labor and management had agreed to establish trust funds for beneficial purposes.
As a signatory to the collective bargaining contracts, Johansson was obligated to make monthly payments to the trustees at the rates specified in each contract for each and every hour spent by each Johansson employee in the performance of labor described in the particular contract; and, by virtue of these interlocking agreements, the trustees of the separate funds were empowered to enforce these contributions from Johansson & Associates.
After making some payments to his subcontractors and to the trustees of the several trust funds, Johansson defaulted on payments to the trustees of the various funds for contributions owing for labor performed on the project by employees subject to the collective bargaining agreements and abandoned the construction project on October 25, 1973. Thereafter, several subcontractors filed mechanics' liens against the subject property and brought an action to foreclose these liens.
All of the trustees had recorded a lien statement on May 15, 1974, and an amended lien statement on June 25, 1974. Based on these filings, the trustees of the eleven labor employee trusts moved the court for an order permitting them to intervene in the foreclosure action. They prayed for a judgment directing that "Intervening Defendants have a first lien, in the amount of $14,090.67 plus recording costs, interest, and the costs of this action."
Mountain Bell filed an answer to the claim of the trustees and then filed a motion for summary judgment, supported by affidavits, against the trustees, contending that 1) the trustees lacked standing to assert a mechanic's lien under the appropriate statutory provisions, and, 2) that even if the trustees could claim such a lien, they had failed to file their lien statement within the period prescribed by statute. Accordingly, even though the record does not reveal any affirmative action by the trial court on the motion of the trustees, we will treat the trustees as properly before the court.
While the trustees attack all of the arguments urged by Mountain Bell as a basis for the entry of summary judgment, we need consider but one of them since it is dispositive of the case. Mountain Bell contends that unpaid fringe benefit contributions are not a part of the value of "labor done" for which a lien may be claimed under § 38-22-101(1), C.R.S.1973. We agree with this contention and it is therefore dispositive of the trustees' attack on the judgment.
Since the underlying principle of our mechanics' lien law is to prevent unjust enrichment, it is usually liberally construed in favor of lien claimants, 3190 Corp. v. Gould, 163 Colo. 356, 431 P.2d 466; but the statutory remedy cannot be judicially extended so as to be applied to cases which do not fall within its provisions. Chambers v. Nation, 178 Colo. 124, 497 P.2d 5. And, where the object of a statute is to charge the property of one with the debt of another, persons claiming its benefits must bring themselves clearly within its purview as belonging to some class in whose favor the remedy is allowed. C & W Electric, Inc. v. Casa Dorado Corp., 34 Colo.App. 117, 523 P.2d 137.
The trustees argue that fringe benefit contributions are a component of the laborer's compensation negotiated under collective bargaining agreements and are therefore necessarily included in the definition of "value of labor" for which a lien is *411 granted under § 38-22-101(1), C.R.S.1973, to a person who has performed such labor. They buttress their argument by focusing on the fact that the statute does not limit the right of lien to "wages" or any other restrictive term and hence they conclude that the language "value of labor done" is broad enought to include all elements of the laborer's compensation. We disagree.
Section 38-22-101(1), C.R.S.1973, provides that:
"Every person who supplies machinery, tools, or equipment in the prosecution of the work, and mechanics, materialmen, contractors, subcontractors, builders, and all persons of every class performing labor upon . . . shall have a lien upon the property upon which they have. . . bestowed labor . . . for the value of such . . . labor done. . ."
In general then, this provision establishes the principle that where labor has been performed a lien shall be had for the value of that labor. Sontag v. Abbott, 140 Colo. 351, 344 P.2d 961. However, this section also contains an express and exhaustive enumeration of those classes of persons entitled to claim a mechanic's lien and those classes of acts for which such a lien may be claimed. Conspicuously absent from this list is the express grant of a lien claim to trustees for unpaid contributions to employee trusts.
Furthermore, and of even greater significance is the recent action of the Colorado legislature in amending this definition of "value of labor" by the addition of subsection (4). See Colo.Sess.Laws 1975, § 38-22-101(4) at 1422. This added subsection provides that as of October 1, 1975:
"For the purposes of this article, the value of labor done shall include, but not be limited to, the payments required under any labor contract to any trust established for the provision of any pension, profit-sharing, vacation, health and welfare, prepaid legal services, or apprentice training benefits for the use of the employees of any contractors, and the trustee of any such trust shall have a lien therefor." (emphasis supplied)
When a statute is amended, it is presumed that the legislature intended the statute to have a meaning different from that accorded to it before the amendment. Martinez v. Research Park, Inc., 75 N.M. 672, 410 P.2d 200; Brown v. White, 2 Ariz.App. 295, 408 P.2d 228. See 82 C.J.S. Statutes § 384b(2). The presumption is strongest in the case of an isolated, independent amendment such as this one. See North River Insurance Co. v. Gibson, 244 S.C. 393, 137 S.E.2d 264. Courts must therefore assume that revision of the prior law was intended to supply some want and to correct some deficiency in the existing legislation. Curless v. Board of County Commissioners, 197 Kan. 580, 419 P.2d 876.
These rules of statutory construction compel the conclusion that the legislative intent behind § 38-22-101(1), C.R.S.1973, was not to include employee trust contributions within the "value of labor" for which a mechanic's lien could be claimed, whereas the amendatory language clearly indicates a change of intent on the part of our legislature with respect to future lien claimants. Furthermore, the effective date of the new statute necessarily renders the amended language inapplicable to the facts and the trustees' claims in this case. See Griffin v. Seymour, 15 Colo.App. 487, 63 P. 809.
Moreover, even assuming arguendo that we were to construe § 38-22-101(1), C.R.S.1973, to include within the definition of "labor done" those unpaid fringe benefit contributions claimed by the trustees, the lien statement filed on their behalf is defective as a matter of law.
Section 38-22-109(1), C.R.S.1973, which was not amended by the legislature in 1975, requires that a lien claimant file a statement containing:
"(b) the name of the person claiming the lien, the name of the person who *412 . . . performed the labor for which the lien is claimed . . . [and]
. . . . . .
(d) A statement of the amount due or owing such claimant."
While the lien statement filed by the trustees listed the trustee of each trust fund claiming the lien, it stated only that:
"[T]he names of the persons who performed the labor or services for which said lien is claimed are too numerous to state herein and are beneficiaries of the above-named Trusts."
There can be no substantial compliance with the requirements of § 38-22-109(1)(b), C.R.S.1973, unless the name of each person who performed the labor which is the basis for a mechanic's lien appears on the lien statement. In this regard, therefore, the lien statement is defective as a matter of law and would also be inadequate under the amendatory language of § 38-22-101(4), C.R.S.1973.
Similarly, without benefit of the 1975 amendment giving the trustees a lien in their own right, the trustees could claim a lien for the value of labor done only by virtue of an assignment of the individual claim of each workman who performed labor on the project. A lien statement filed by one who is claiming as the assignee of numerous claims must show the balance due with respect to each separate claim; a lien statement which merely states the aggregate amount of indebtedness is defective and insufficient. See Cannon v. Williams, 14 Colo. 21, 23 P. 456; Hanna v. Colorado Springs Bank, 3 Colo.App. 28, 31 P. 1020. Hence, since the lien statement filed by the trustees contained only the aggregate amount claimed as due and owing to the eleven trustees, it was therefore inadequate and ineffectual to assert a lien.
Consequently, since the trustees could assert no valid lien, i. e., no interest in the property which was the subject of the foreclosure action, and the lien statement filed on their behalf was defective as a matter of law, summary judgment dismissing their claim with the effect of denying intervention was proper.
Judgment affirmed.
VanCISE and KELLY, JJ., concur.